**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **Pocono Mountain Lake Forest** | : | **Case No. 5:22-01084-MJC** |
| **Community Association, Inc.,** | : | |
| | : | |
| **Debtor.** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

# O P I N I O N

## I.    INTRODUCTION

Currently pending before the Court is Debtor's objection to a proof of claim filed by creditors Patriot Developers & Excavating, LLC/Sno Chasers Association, Inc. ("Sno Chasers"). In its proof of claim, Sno Chasers asserts that it holds a claim in the amount of $91,038.97 for lost profits and other charges resulting from Debtor's breach of the parties' pre-petition contract for snow and ice removal.

Debtor seeks disallowance of the proof of claim in its entirety on the grounds that the amended proof of claim is untimely or that Sno Chasers failed to prove consequential damages with reasonable certainty. If unsuccessful on either of those grounds, Debtor alternatively seeks to limit the amount of the claim under two theories: 1.) any amendment to the contract that extended it beyond the first year was not binding on Debtor, and 2.) Sno Chasers' failed to mitigate its damages. For the reasons set forth below, the objection will be overruled and the proof of claim will be allowed in the amount of $70,953.97. Additionally, because the parties did not adequately address the $20,085.00 in attorney's fees, the Court will permit submission of time records and an opportunity to object.

## II.    PROCEDURAL POSTURE

### A.  The Bankruptcy Case

On June 10, 2022, debtor Pocono Mountain Lake Forest Community Association, Inc. ("Debtor" or "Pocono Mountain") filed a voluntary Chapter 11 bankruptcy petition.  On the same day, Debtor filed its schedules, statements, and other required documents.  Dkt. # 7.  On Schedule E/F, Debtor listed Sno Chasers as having a disputed claim of $127,000.00.  *Id.* at 21.

Debtor then promptly moved to set a claims bar date.  *See* Dkt. # 32.  As established by the Order dated August 12, 2022, the deadline for filing proofs of claim was November 15, 2022.  *See* Dkt. # 34.

On December 23, 2022, Debtor filed its initial Chapter 11 Small Business Plan of Reorganization.  Dkt. # 65.  Debtor later filed its Disclosure Statement and an Amended Chapter 11 Small Business Plan ("Amended Plan").  *See* Dkt. # 71, 76.  The Court conditionally approved the Disclosure Statement and scheduled a hearing for final approval of the Disclosure Statement and confirmation of the Amended Plan for February 2, 2023.  *See* Dkt. # 73.

Sno Chasers filed objections to the Disclosure Statement and Amended Plan.  *See* Dkt. # 91, 92.  Prior to the confirmation hearing, Debtor and Sno Chasers agreed, pursuant to a stipulation, that ¶4.04.5 of the Amended Plan would not impair Sno Chasers' claim and the Court would determine the amount of any allowed claim through the claims allowance process.  *See* Dkt. # 96. The Amended Plan was confirmed on February 2, 2023 ("Confirmed Plan").  *See* Dkt. # 100.

As of the effective date of the Confirmed Plan, Debtor became the "Reorganized Debtor."[1] *See* Dkt. # 76 at 5 (unpaginated).  The Confirmed Plan provided that certain allowed general unsecured claims would be paid in full.  *Id.* at 8.  Also pursuant to the Confirmed Plan, Debtor

---

[1]  For ease of reference, the Court will refer to the Reorganized Debtor as "Debtor" throughout this Opinion.

retained the authority to file objections to proofs of claims and such objections were to be filed no later than sixty days after the effective date of the Confirmed Plan. *See* Dkt. # 76 at 10.

### B. Sno Chasers' Proof of Claim

On November 15, 2022, Sno Chasers, along with its affiliated company Patriot Developers & Excavating, LLC ("Patriot Developers"), timely filed Proof of Claim # 7-1 in the amount of $143,838.68 for "Materials provided and services performed." *See* Claim # 7-1. Sno Chasers filed three amendments to its proof of claim, the last of which was filed on August 16, 2023. Proof of Claim # 7-4 ("Claim # 7-4") asserted a debt in the amount of $91,038.97 for "Lost profits, interest, penalties & attorney fees pursuant to a contract."

On August 21, 2023, Debtor filed the Objection to Claim Number 7 of Patriot Developers & Excavating, LLC/Sno Chasers Association, Inc. ("Objection"). Dkt. # 153. Sno Chasers filed its response to the Objection, Dkt. # 159, and a hearing on the Objection was scheduled for October 12, 2023. In advance of the hearing, the Court scheduled a status conference. At the status conference, the Court allowed two months for discovery pursuant to the parties' request, after which, the parties were permitted to submit trial briefs. The hearing on the Objection was continued to January 17, 2024 for an evidentiary hearing.

The parties filed their trial briefs on December 25, 2023 and January 3, 2024 respectively. *See* Dkt. # 181, 182. The Court conducted an evidentiary hearing as scheduled on January 17, 2024. The matter was taken under advisement. Post-trial briefs were filed on February 7, 2024 and February 26, 2024. *See* Dkt. # 189, 194. This matter is now ripe for disposition.

3

### III.  JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the United States District Court for the Middle District of Pennsylvania dated March 11, 2016.  The pending matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (B).  Venue is proper pursuant to 28 U.S.C. §1409(a).

This Opinion constitutes the findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052, which is applicable to contested matters pursuant to Fed. R. Bankr. P. 9014(c).

### IV.  FINDINGS OF FACTS

Based on the Court's evaluation of the testimony and evidence presented at the evidentiary hearing,[2] the Court makes the following findings of fact:

**Pre-Petition Events**

1.  Debtor is Pocono Mountain Lake Forest Association, Inc., a Pennsylvania non-profit corporation that serves as the property owners' association for the Pocono Mountain Lake Forest community located in Dingmans Ferry, Pennsylvania.

2.  Debtor experienced financial distress resulting from extended state court litigation over two competing boards of directors who were attempting to assert lawful authority on behalf of the property owners' association.

---

[2]  Three witnesses testified at the January 17, 2024 hearing: Mr. Brian Ascari, principal of Sno Chasers and Patriot Developers; Ms. Linda White, current President of the Board of Directors of Debtor; and Samual Mall, a former Treasurer of the Board of Directors of Debtor.

4

3.    At the November 2018 general membership meeting for the property owners' association, two separate groups claimed to have been validly elected as the Board of Directors of the property owners' association. *See* Exhibit SNO-39.

4.    In January 2019, the group which included Larry Floss, as president, and Samual Mall as treasurer ("Association"), filed suit in the Pennsylvania Court of Common Pleas, Pike County ("Common Pleas Court"), seeking *inter alia*, a preliminary injunction against the other group of individuals who were also asserting control of the governance of the owners association. *See Id.*

5.    In January 2020, after extensive hearings, the Common Pleas Court determined that neither board had been validly elected in November 2018 and declared all five seats on the board vacant, with a general membership meeting to be scheduled so that new elections could take place. *See Id.*

6.    The Association appealed, alleging the Common Pleas Court had erred in denying its request for a preliminary injunction.  On January 8, 2021, the Common Pleas Court decision was affirmed by the Pennsylvania Commonwealth Court.  *See* Ex. SNO-40; *Pocono Mountain Lake Forest Community Association, Inc. v. Swift*, 2021 WL 71709 (Pa. Commw. Ct. 2021).

### The Sno Chasers/Patriot Developers Contracts

7.    In 2018, Patriot Developers and Sno Chasers were separate limited liability companies. Brian Ascari was the sole member for each entity.  1/17/24 Transcript, Dkt. # 192 at 3-4.

8.      On September 8, 2018, Mr. Floss, on behalf of Pocono Mountain,[3] executed a contract for snow and ice management ("Contract") with Sno Chasers.[4] *See* Ex. SNO-38 at Ex 2.

9.      Upon execution of the Contract, Pocono Mountain paid $15,000 to Patriot Developers. *See* Ex. SNO-20.

10.     Initially, the Contract covered the time period from November 1, 2018 through April 15, 2019. *See* Ex. SNO-38, Ex. 2.

11.     Pursuant to its terms, the Contract was subject to automatic renewal for two more winter seasons unless Pocono Mountain notified Sno Chasers in writing by April 15, 2019. *See Id.*

12.     The terms of the Contract specify that each snow event was a flat rate of $3,785.00. This included plowing for the "entire community roadways, three (3) sections, clubhouse area, two (2) school bus turn around areas, and three (3) mailbox areas." *See Id.* Pre-treating or "Traction Aid spread" was billed at a rate of $95.00 per ton. *Id.*

13.     Approximately three months after the Contract was signed, Pocono Mountain informed Mr. Ascari that Debtor's Board of Directors was engaged in an internal dispute with a competing board, had lost control of the finances, and was unable to pay for services under the Contract. 1/17/24 Tr., Dkt. # 192 at 34-35.

14.     In late 2018, Debtor failed to pay for services under the Contract. 1/17/24 Tr., Dkt. # 192 at 9-10.

---

[3] In its Objection, Debtor asserted that Claim # 7-4 should be disallowed because Sno Chasers/Patriot Developers was not properly engaged or properly authorized by Debtor's board of directors to perform services. *See* Dkt. #153 at ¶7.a. Debtor did not argue lack of authority at the evidentiary hearing or in its pre- and post-trial briefing. Accordingly, the Court has determined that this issue has been waived.

[4] There is some question as to which of Mr. Ascari's entities was the contracting party. The Contract, which had both Patriot Developer's and Sno Chasers' logo at the top of the first page, did not specifically identify who the "Contractor" was; however, per the stated terms and conditions, Sno Chasers was the entity who agreed to manage the snow and icing conditions for Pocono Mountain. The Court will refer to Sno Chasers as the creditor throughout this Opinion.

15. Mr. Ascari met with Mr. Floss to discuss the Contract, and on December 27, 2018, the parties entered into a further contract ("Addendum"). *See* Ex. SNO-38, Ex. 3.

16. In the Addendum, the parties agreed to suspend services under the Contract until Pocono Mountain's funding once again became available. Once Pocono Mountain's funding was restored, Sno Chasers would resume providing services under the Contract. *See Id.*

17. Sno Chasers provided snow and ice management under the Contract from November 15, 2018 through December 2018. *See* 1/17/24 Tr., Dkt. # 192 at 9. Sno Chasers did not provide services to Pocono Mountain at any time after December 2018. *Id.* at 16.

18. Pocono Mountain made several payments to Sno Chasers during 2019, 2020, and 2021 under the Contract. *See* Ex. SNO-27 – SNO-29.

### Bankruptcy Filing and Post-Petition Events

19. On June 10, 2022, Debtor filed a voluntary Chapter 11 bankruptcy case.

20. Pursuant to the Order Setting Bar Date, proofs of claim were required to filed on or before November 15, 2022 ("Bar Date"). *See* Dkt. # 34.

21. On November 15, 2022, Patriot Developers/Sno Chasers timely filed Claim # 7-1 in the amount of $143,838.68 for "Materials provided and services performed." *See* Claims Register, Claim No. 7-1.

22. Patriot Developers/Sno Chasers attached as an exhibit to Claim # 7-1, a series of invoices referencing the Contract.

23. The first invoice, dated January 8, 2019, has individual billing entries for plowing and pre-treating for the time period from November 15, 2018 to January 7, 2019. The invoice details, the amount charged for each date and a running balance of charges due.

24. The subsequent invoices, *i.e.*, March 5, 2020 and August 19, 2021, follow a similar format but for each date, the invoice lists the "Activity Prepared For (Equipment/Labor)," and for some of the dates, the invoice includes the type of weather, such as icing, and the amount of precipitation that fell.

25. On December 26, 2022, Debtor filed an objection to Claim # 7-1 and Sno Chasers filed a response in opposition.[5] Dkt. # 67, 85.

26. On March 6, 2023, Patriot Developers/Sno Chasers filed an amended claim, Claim # 7-2, in the amount of $133,259.00 for "Materials provided, services performed, dedicated machinery." *See* Claims Register, Claim No. 7-2.

27. Claim # 7-2 included as exhibits, the Contract and Addendum, and an itemized invoice of charges and payments received from November 15, 2018 through June 1, 2022.

28. Debtor objected to Claim # 7-2; however, Debtor's objection was overruled due to a procedural defect. *See* Dkt. # 113.

29. On March 29, 2023, Patriot Developers/Sno Chasers then filed a second amended proof of claim, Claim # 7-3, in the amount of $21,620.00 for "Breach of Contract Damages." The exhibit attached included an itemization of the charges. *See* Claims Register, Claim No. 7-3.

30. On March 30, 2023, Debtor filed an objection to Claim # 7-3.[6] Dkt. # 118.

---

[5] Claim # 7-1 was not adjudicated due to the filing of an amended proof of claim.
[6] Claim # 7-3 was filed by Sno Chasers' prior legal Counsel in connection with a purported settlement of the claim. Per the Order Denying the Motion to Enforce Settlement Agreement, the Court determined that Sno Chasers' prior Counsel did not have actual authority from his client to settle the claim. *See* Dkt. # 150. Accordingly, Claim # 7-3 was subsequently amended.

8

31.     On August 16, 2023, Patriot Developers/Sno Chasers filed Claim # 7-4 in the amount of $91,038.97 for "Lost profits, interest, penalties & attorney fees pursuant to a contract." *See* Ex. SNO-38.

32.     Patriot Developers/Sno Chasers attached several exhibits to Claim # 7-4, including: a narrative explanation of the claim, the Contract and the Addendum, an itemization of charges under the Contract, and time entries substantiating the $20,085.00 in attorney's fees.

33.     Patriot Developers/Sno Chasers did not seek Court approval prior to filing amended Claims # 7-2, # 7-3, # 7-4, which were all filed after the Bar Date.


## V.      LEGAL STANDARD FOR OBJECTION TO PROOF OF CLAIM

Section 502(a) provides that a proof of claim "is deemed allowed, unless a party in interest … objects." 11 U.S.C. §502(a).[7] Pursuant to Rule 3001(f), a proof of claim "executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

The Third Circuit Court of Appeals in *In re Allegheny International, Inc.*, 954 F.2d 167 (3d Cir. 1992), described the shifting burdens in proofs of claim litigation:

> [A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. It is often said that the objector must produce evidence equal in force to the prima facie case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden

---

[7]  Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37.

> reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.

*Id.* at 173-74 (internal citations omitted).

Here, Debtor conceded at the evidentiary hearing that Claim # 7-4 was entitled to *prima facie* validity. Therefore, the burden shifted to Debtor to provide evidence sufficient to rebut the validity of Claim # 7-4.

In the claims allowance process, the validity and enforceability of a claim is generally determined pursuant to applicable non-bankruptcy law. *See In re Mann Realty Assocs., Inc.*, 608 B.R. 408, 416 (Bankr. M.D. Pa. 2019) (citing *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000)); *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006). In this case, there is no dispute that Pennsylvania law applies to the contract claim.

## VI. DISCUSSION

As stated above, Debtor advances several grounds in support of its Objection to Sno Chasers' Claim # 7-4. The Court will address each below.

### A. Timeliness of Amended Claim

Debtor first contends that the claim should be disallowed in its entirety because Sno Chasers failed to seek leave of Court to file an amendment to the claim. Debtor further argues that Claim # 7-4 is asserting a new theory of recovery based on facts that are not set forth in its timely filed Claim # 7-1. According to Debtor, Claim # 7-1 was a debt for materials and services that Sno Chasers actually provided and for which it was not compensated. In contrast, Debtor contends that Claim # 7-4 is now for the lost profits that Sno Chasers would have earned had the Contract continued. Debtor argues that in order for Sno Chasers to assert this type of claim it had to be included as part of Claim # 7-1.

Sno Chasers responds urging this Court to permit the amended claim because it is neither futile nor prejudicial. The amendment was necessary to correct errors that prior Counsel had made in filing Claim # 7-3, which Sno Chasers claims was not only incorrect but also unauthorized. As part of its trial brief, Sno Chasers included a "Cross-Motion for Leave to File Amended POC Nunc Pro Tunc." See Dkt. # 182. While not a formal motion, Sno Chasers argued that amended Claim # 7-4 should be allowed.

The determination to permit an amendment to a proof claim is within the discretion of the Bankruptcy Court. *In re Ben Franklin Hotel Associates*, 186 F.3d 301, 309 (3d Cir. 1999) (citing *In re Hemingway Transport, Inc.*, 954 F.2d 1, 10 (1st Cir. 1992)). Courts generally look to the standards for amendments to pleadings under Fed. R. Civ. P. 15. *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 141 (3d Cir. 1998); *In re Exide Technologies*, 601 B.R. 271, 291 (Bankr. D. Del. 2019). The Third Circuit has explained that "amendments to proofs of claim should be freely allowed where the purpose is to cure defects in a claim as originally filed, to describe a claim with greater particularity, or to plead new theories of recovery on facts set forth in the original claim." *Ben Franklin Hotel*, 186 F.3d at 309 (citation omitted). In a nutshell, after confirmation, "amendments to proofs of claims cannot seek to recover damages that were outside the original proof of claim; they can only clarify or supplement the basis for seeking amounts within the original proof of claim." *In re Maxus Energy Corp.*, 2023 WL 5543612, at *5 (Bankr. D. Del. 2023). The main inquiry then is whether the original proof of claim fairly put the debtor on notice of the claim asserted in the subsequent amendment. *Id.* at *8.

In this case, Debtor was well aware that Sno Chasers held a pre-petition claim. This is evidenced by Debtor having listed Sno Chasers on Schedule E/F with a disputed unsecured claim in the amount of $127,000. Furthermore, at the evidentiary hearing Debtor freely admitted that it

was in breach of the Contract. However, Debtor argues that the entire claim must be disallowed because Sno Chasers altered its theory of recovery from failure to pay for services and materials actually provided to lost profits.

To be fair, Claim # 7-1 is somewhat confusing but the claim was clearly based on the Contract, which was referenced in the invoices that were attached. The January 8, 2019 invoice gave a detailed itemization of the services and materials actually provided. According to that invoice, Debtor owed Sno Chasers for materials provided and services performed on December 27, 2018 and January 7, 2019. Those entries were not fully paid for because the $15,000 deposit Pocono Mountain provided upon execution of the Contract, had been expended by that point. In that respect, Claim # 7-1's description of "materials provided and services performed" was correct.

The March 5, 2020 and August 19, 2021 invoices had a subtle distinction, in that, the time entries were described as "Activity Prepared For (Equipment/Labor)." While not particularly evident, the invoices were plainly attempting to indicate the dates and snow events that Sno Chasers would have provided services and materials had the Contract not been breached. This distinction was muddied by the fact that the March 5, 2020 and August 19, 2021 invoices billed for services and materials at the full Contract rates as opposed to listing only the amount of lost profit. In this respect, the stated basis for Claim # 7-1 was incomplete.[8]

Claim # 7-4 stated as its basis "Lost profits, interest, penalties, & attorney's fees pursuant to a contract." The claim is reduced to $91,038.97 which Sno Chasers represents is its lost profits, plus interest, late fees, and attorney's fees. The exhibit attached lists dates with a "Loss Amt." plus interest charges, and any corresponding late fee.

---

[8] Claim # 7-1 also included an amount due for "Attorney Fees to Date" in the amount of $5,400.00.

Case 5:22-bk-01084-MJC    Doc 222    Filed 09/13/24    Entered 09/13/24 15:27:57    Desc
Main Document    Page 12 of 21

The Court determines that both Claim # 7-1 and Claim # 7-4 were based on the Contract and were seeking to recover breach of contract damages. Claim # 7-4 was not a new claim – it was based on the same set of facts and Contract as Claim # 7-1. Claim # 7-4 was correcting the amount of the debt to include only the lost profit and other allowable charges under the Contract. Unlike amended proofs of claim that change classification such as unsecured to priority, the amendment here did not constitute a new claim that would be time barred. *See e.g., In re Walls & All, Inc.*, 127 B.R. 115 (W.D. Pa. 1991) (holding that Bankruptcy Court did not err in determining that change in priority changed nature of claim and denying motion to amend proof of claim). By Debtor's own argument, Claim # 7-4 asserts a different theory of recovery, which is permissible.

The Court finds that even though Claim # 7-1 was to some extent confusing and inaccurate, it gave Debtor fair notice that Sno Chasers was asserting a debt for breach of the Contract. Claim # 7-4 does not change that. It is now asserting lost profits which appear to have been part of the attachments to Claim # 7-1. Accordingly, the Court will allow Sno Chasers' request for a *post facto* amendment to Claim # 7-1 and Debtor's Objection is overruled on this ground.

The Court will turn now to address the more substantive objections to Claim # 7-4.

**B. Lost Profits**

1. <u>Parties' Arguments</u>

Debtor next contends that Claim # 7-4 should be disallowed in its entirety because Sno Chasers failed to prove its damages for lost profits with reasonable certainty. According to Debtor, the attachment to Sno Chasers' Claim # 7-4 is an itemization of materials and services that Sno Chasers would have provided to Debtor had it been able to perform under the Contract. It was not an itemization of its lost profits. To establish lost profits with reasonable certainty, Debtor argues that Sno Chases was required to produce expert testimony and/or documentary evidence from the

business, such as, tax returns, profit and loss statements, or invoices or receipts of similar snow removal clients. Instead, Sno Chasers offered the self-serving testimony of Mr. Ascari who claimed that the $70,953.97 figure "could be" accurate. Debtor therefore argues that Sno Chasers failed to substantiate the numbers that purport to establish lost profits and produced no evidence as to the actual amount of any alleged lost profit.

Sno Chasers disputes Debtor's contentions, arguing that it produced substantial and uncontroverted evidence of lost profits. Sno Chasers asserts that Pennsylvania case law is very clear that mathematical precision is not required to prove lost profits. Rather, it contends that the evidence must establish the fact of damages with a fair degree of probability. *See Advent Systems Ltd. v. Unisys Corp.*, 925 F.2d 670, 680 (3d Cir. 1991) (applying Pennsylvania law). Sno Chasers argues that in this case, it would be particularly difficult to calculate the exact amount of lost profits because it would require making assumptions on an event-by-event basis over a three year period. Sno Chasers asserts that a precise calculation would require factoring in the type of snow or ice event, the length, the number of hours of each equipment operator, the amount of traction material to be spread based on the changing temperate during each event, wind conditions and directionality to deal with drifting snow, the rate of snow fall per hour, the duration of each event, etc.

Sno Chasers asserts that its lost profit amount was not based on conjecture or speculation because Mr. Ascari accounted for the various factors listed above by using a 50% profit margin, which was then applied to the specific dates that he recorded snow and ice events over the relevant three year period. At trial, Debtor failed to controvert any of Mr. Ascari's testimony on this issue. Therefore, Sno Chasers asserts that it carried its burden to prove lost profits.

14

2. <u>Analysis</u>

Generally speaking, lost profits are the difference "between that which the plaintiff actually earned and that which the plaintiff would have earned absent the defendant's breach." *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 692 F. Supp. 2d 487, 519 (M.D. Pa. 2010) (citing *Smith v. Penbridge Assocs.*, 655 A.2d 1015, 1021 (Pa. Super. 1995)). In order to recover damages for lost profits under Pennsylvania law, "a plaintiff bears the burden of establishing that such damages: 1. are calculable with reasonable certainty; 2. were proximately caused by the breach of contract; and 3. were reasonably foreseeable." *In re Partners Grp. Fin., LLC*, 394 B.R. 68, 80 (Bankr. E.D. Pa. 2008) (citing *Company Image Knitware, Ltd. v. Mothers Work, Inc.*, 909 A.2d 324, 336 (Pa. Super. 2006)).

As the Third Circuit explained:

> 'Reasonable certainty,' as with most other standards of proof, is a difficult concept to quantify, but Pennsylvania courts have provided guidance as to what the term entails for purposes of assessing damages. At a minimum, reasonable certainty embraces a rough calculation that is not 'too speculative, vague or contingent' upon some unknown factor.

*ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 669 (3d Cir. 1998) (citing *Spang & Co. v. United States Steel Corp.*, 545 A.2d 861, 866 (Pa. 1988)). When attempting to establish lost profits, a claimant may utilize such methods as: "(1) evidence of past profits; (2) profits made by others or by similar contract where the facts were not greatly different; (3) testimony of experts if based on anything more than individual opinions or conjecture." *Advent Sys.*, 925 F.2d at 681 (citing *Massachusetts Bonding & Ins. Co. v. Johnston & Harder, Inc.*, 22 A.2d 709, 714 (Pa. 1941)). The Pennsylvania Supreme Court has acknowledged that "lost profit damages are difficult, if not impossible, to calculate with precision," *Vinculum, Inc. v. Goli Techs., LLC*, 310 A.3d 231, 257 (Pa. 2024) (concurring opinion), but has instructed that they cannot be

15

"based on mere guesswork or speculation," *Id* at 256 (citing *Helpin v. Trustees of Univ. of Pennsylvania*, 10 A.3d 267, 270 (Pa. 2010)). "Absolute certainty is not, and cannot be required, because prospective lost profits are inherently counterfactual." *Vinculum*, 310 A.3d at 257. Thus, some uncertainty in the damages calculation is not fatal. *1228 Investment Group, L.P. v. Hub Group, Inc.*, 635 F. Supp. 3d 381, 388 (E.D. Pa. 2022) (citing *ATACS Corp.*, 155 F.3d at 669).

Debtor challenged only the first prong of the test that the lost profits are able to be calculated with reasonable certainty. Debtor's main argument at the evidentiary hearing was that Sno Chasers submitted its exhibit in support of Claim #7-4 but the exhibit was deficient because it did not show actual lost profits. Debtor pointed to the fact that Sno Chasers' calculated costs for each snow event was exactly the same. Debtor contended that this was an unreasonable basis upon which to rely in order to establish any amount of lost profit.

As part of Claim # 7-4, the exhibit mentioned above was prepared by Mr. Ascari in support of Sno Chasers' claim for lost profits. The exhibit has charges from January 2019 to August 2023 and a running balance of those charges which include interest and late fees. The total balance due is $70,953.97. *See* Ex. Sno-38, Ex. 4. The dates listed correspond to the dates that Sno Chasers alleges it would have provided services under the Contract. *See* 1/17/24 Tr., Dkt. # 192 at 21.

Mr. Ascari testified that as part of his business he regularly records the details of when snow events occur and the amounts of snow or precipitation. He acknowledged that while his expenses for each snow or weather event would not be exactly the same, he testified that it is difficult to determine the exact lost profit because of the varying nature of snow events. For instance, he pointed out the amount of labor expended necessarily depends on certain factors including the length of the storm and the type and rate of precipitation.[9] He testified that there are

---

[9] Mr. Ascari testified that Sno Chasers does not have employees. His drivers are independent contractors and therefore Sno Chasers does not have a fixed cost for labor.

numerous other factors that must be taken into account, such as fuel, equipment wear and tear, maintenance, labor, insurance, and materials. Because these expenses and costs fluctuate over time and are different for each snow or weather event, he used a 50% profit margin when preparing the exhibit. He testified that he uses this percentage when bidding on jobs or accounts.

Debtor introduced no evidence that challenged or called into question the factual underpinnings of Mr. Ascari's testimony.[10] Accordingly, the Court credits the testimony of Mr. Ascari and agrees that based upon the nature of the services that Sno Chasers provides, it would be especially difficult for Sno Chasers to calculate its *actual* lost profits. The Court finds that based on the number of factors involved and the fluctuation in costs and expenses, Sno Chasers' use of an estimated profit margin is a reasonable basis to calculate lost profits. *See Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1258 (Pa. Super. 1983) ("It is only required that the proof afford a reasonable basis from which the fact-finder can calculate the plaintiff's loss." (citing *Myer Feinstein Co. v. DeVincent*, 30 A.2d 221 (Pa. Super. 1943))). As Sno Chasers correctly argued, it would be unjust to allow Debtor to benefit from its breach of the Contract simply because the damages are difficult to measure in these circumstances. *See Pugh v. Holmes*, 405 A.2d 897, 910 (Pa. 1979) ("mere uncertainty as to the amount of damages will not bar recovery where it is clear that damages were the certain result of the defendant's conduct"); *Delahanty,* 464 A.2d at 1257 ("justice and public policy require that the wrongdoer bear the risk of uncertainty which his own wrong has created and which prevents the precise computation of damages").

Accordingly, the Court finds that Sno Chasers met its burden of proof on lost profits in the amount of $70,953.97 and Claim # 7-4 will be allowed in that amount.

---

[10] The Court recognizes that the burden of proof is on Sno Chasers but merely notes that Debtor did not present its own evidence to contradict that the 50% profit margin is not an accurate measure of projected lost profits for this business.

### C. Failure to Mitigate Damages

Debtor also contends that Claim # 7-4 should be disallowed because Sno Chasers failed to mitigate its damages after the Contract was breached. Debtor argues that the non-breaching party has a duty to make an honest, good faith effort to mitigate damages under Pennsylvania law. Because Mr. Ascari testified that he made no effort to mitigate damages, Debtor asserts that Claim # 7-4 should be disallowed in its entirety.

Sno Chasers concedes that Mr. Ascari took no action to mitigate damages. However, Sno Chasers asserts that it did not carry the burden of proof on this issue – the burden was on the breaching party. Furthermore, it argues that the duty to mitigate is not an absolute bar to recovery – it only reduces any damages. Here, because Debtor had not met its burden to show any evidence that mitigation was possible, Sno Chasers contends this argument is without merit.

Under Pennsylvania law, mitigation is an affirmative defense to a breach of contract claim. *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 258 (3d Cir. 2008). The burden of proof is on the breaching party. *Id.* (citing *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1448 (3d Cir.1996) and *Williams v. Masters, Mates & Pilots of Am.*, 120 A.2d 896, 901 (Pa. 1956)). The breaching party must establish: "(1) what reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced." *Prusky*, 532 F.3d at 258-59 (citing *Koppers*, 98 F.3d at 1448).

While Mr. Ascari testified that he took no action to seek other work in place of the Contract, Debtor did not present evidence to establish the above elements.[11] Accordingly, no extended

---

[11] At trial, Mr. Ascari testified that he had an obligation to keep his equipment on "ready hold" so that if Debtor needed his services his equipment would be available. 1/17/24 Tr., Dkt. # 192 at 35-37. To bolster this "obligation," he also testified that Debtor's officers repeatedly confirmed their intention to honor the Contract and made certain payments to Sno Chaser during this period. *Id.* at 36-37, 40-41; Dkt. # 191, 1/17/24 Tr. at 35-36. *See also* Ex. SNO-27- SNO-29.

18

discussion is necessary for the Court to conclude that Debtor has failed to meet its burden on this issue and the damages will not be reduced for failure to mitigate.

### D. Limitation on Damages

Lastly, Debtor argues that Claim # 7-4 should be disallowed to the extent that Sno Chasers seeks damages beyond the first year of the Contract. According to Debtor, the parties to the Contract were Debtor and Sno Chasers. However, the Addendum that extended the Contract for two years was made and executed by Patriot Developers, who was not a party to the Contract. Therefore, Debtor claims that the Addendum is not binding on it because the original Contract was with Sno Chasers. Debtor also makes an alternative argument. Debtor argues that because it breached the Contract in December 2018, there was no extension of the Contract for two additional years. Thus, under either theory, Debtor argues that any resulting damages must be limited to one year under the Contract.

In response, Sno Chasers argues that clearly the Contract existed, which was executed in September 2018. The Contract provided for a 2 year extension. Sno Chasers argued that estoppel applies to prevent Debtor from arguing that no agreement existed when the parties acted on their mutual understanding that it did exist.

Under basic contract principles, "[w]hen performance of a duty under a contract is due, any nonperformance is a breach." *McCausland v. Wagner*, 78 A.3d 1093, 1101 (Pa. Super. 2013) (citing *Widmer Engineering, Inc. v. Dufalla*, 837 A.2d 459, 467-68 (Pa. Super. 2003)). If the breach is material, the non-breaching party is relieved of its obligation to perform under the contract. *Id.* (citing *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 648 (Pa. 2009)).

At that point, the non-breaching party has two options. It may elect to "rescind the contract and seek restitution or it can continue performance under the contract and seek damages."

*Hartford Steam Boiler Inspection v. International Glass Products, LLC*, 2016 WL 5468111, at *19

(W.D. Pa. 2016) (citing *McCausland*, 78 A.3d at 1102)).

Here, there is no dispute that Pocono Mountain was in breach due to its inability to pay

under the terms of the Contract. Sno Chasers clearly chose not to cancel the Contract and opted

to continue its performance in the hope that Pocono Mountain would regain control of the Board

and its finances.[12]

By its terms, the Contract was a three year conditional agreement. It provided that the

Contract would be automatically extended for two additional years at the same rates unless Pocono

Mountain notified Mr. Ascari in writing by April 15, 2019 that Pocono Mountain did not wish to

renew for additional years. Pocono Mountain did not notify of its intent to end the Contract after

the first year. In fact, Pocono Mountain assured Sno Chasers that it wanted to continue the

Contract and entered into the Addendum in December 2018 and made periodic payments to Sno

Chasers in 2019-2021.[13]

---

[12] Debtor argues that the Addendum is not binding on it because the Addendum identifies Patriot Excavating as the party to the original Contract, and according to Debtor, the Contract was with Sno Chasers. Both the Contract and the Addendum are drafted on letterhead that contain the names of both entities – Sno Chasers and Patriot Developers. The Court finds that under these circumstances, any potential error in the Addendum is not material. Pocono Mountain was dealing with Mr. Ascari who was the 100% member of both Sno Chasers and Patriot Excavating. Dkt. # 192, 1/17/24 Tr. at 3-4, 32-33. Pocono Mountain made repeated assurances that it intended to perform under the Contract and made several payments to Sno Chasers in 2019, 2020 and 2021 to keep the Contract in place. *See* Ex. SNO-27 - SNO-29. There is nothing in the record to suggest that Debtor was mislead by the dual entity reference and appears to be merely a typing error.

[13] Sno Chasers' Claim # 7-4 also requests reimbursement for $20,085.00 in attorney fees. The Contract provides for an award of "applicable attorney fees … if collection processes are initiated." No invoices were submitted to support the requested fees and Debtor did not make any specific objection to the fees. On this record, the Court is unable to determine reasonable attorney fees. The Court shall allow Sno Chasers an opportunity to submit invoices and Debtor may specifically object to any such fees. A hearing may be scheduled if necessary.

## VII.  CONCLUSION

For the reasons stated above, Debtor's Objection to Claim # 7-4 is overruled and Claim # 7-4 will be allowed in the amount of $70,953.97.  As to the request for attorneys' fees, Sno Chasers shall have 21 days from the date hereof to submit its time records and Debtor shall have 21 days to submit any specific objections thereto.  A hearing may be set by the Court if necessary.  An appropriate order will be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: September 13, 2024